# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

METAL MORPHOSIS, INC.,

    Plaintiff,

      v.

ACORN MEDIA PUBLISHING, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-193-TWT

## ORDER

This is an action for copyright infringement. It is before the Court on the Defendant Acorn Media Publishing's Motions to Dismiss and for Attorneys Fees [Doc. 5, 28]. For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

## I. Introduction

The Plaintiff is a Georgia corporation that manufactures jewelry. The Defendant is a District of Columbia corporation with its principal place of business in Maryland. The Defendant sells products on its website and focuses on "products that fall outside the homogenous mainstream with a special focus on the best of British television and mind, body, [and] spirit programming." Acornmedia.com,

About Acorn Media Group, http://www.acornmedia.com/about/about.html (last visited Feb. 18, 2009).

The Defendant also sells jewelry on its website, which led to the dispute in this matter. At the time that this lawsuit was filed, the Plaintiff and the Defendant were both selling pendants in the shape of a bird's nest that they obtained from Brown County Silver. The Plaintiff began selling the bird's nest pendants in September 1994. It obtained a certificate of registration from the Register of Copyrights covering the bird's nest pendant in March 2003. The Plaintiff alleges that the pendant has a distinguishing feature that is hidden from ordinary view. During the original manufacture of the pendant, the Plaintiff's president mistakenly pressed her finger into the back of the mold so that her fingerprint shows up on the back of the pendant. (Amended Comp. ¶ 36).

Around November 21, 2007, the Plaintiff discovered the bird's nest pendant on the Defendant's website and recognized it as a copy of its products. Upon closer inspection, the Plaintiff claims that the Defendant's pendants contained the same inadvertent fingerprint in the same spot as the original mold. (Id., ¶ 36). Although the Plaintiff sent the Defendant a cease-and-desist letter, the Defendant continued its online sale of the pendants until at least December 3, 2007. (Id., ¶ 34). According to the complaint, during this time, the Defendant even reduced the prices on the pendants

in order to clear its inventory of the pendants. (Id., ¶ 35). The Plaintiff ultimately filed suit against Brown County Silver and the Defendant Acorn Media for copyright infringement. Brown County Silver reached an out-of-court settlement with the Plaintiff, and the remaining Defendant Acorn now moves to dismiss.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a plausible claim for relief. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965-66 (2007); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is improbable that a plaintiff would be able to prove those facts, and even if the possibility of recovery is extremely remote and unlikely. Twombly, 127 S. Ct. at 1965. In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the

plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Twombly, 127 S. Ct. at 1964).

III.  Discussion

A.  Copyright Infringement

    1.  Distributor Liability

Initially, the Defendant argues that it cannot be liable for copyright infringement because it is an "innocent purchaser (and third-party reseller) of the allegedly infringing item."  (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 1).  A copyright infringer is anyone that trespasses upon the exclusive rights of the owner of a copyright.  Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 433 (1984).  The copyright owner's exclusive rights include the reproduction, the preparation of derivative forms, the distribution, and the display of copyrighted works. Id. (citing 17 U.S.C. § 106).  Wrongful distribution of copyrighted works constitutes direct infringement and not contributory or vicarious infringement.  See, e.g., Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002).  The Plaintiff claims that the Defendant improperly distributed its copyrighted works.

Although the Defendant admits that it sold the pendants on its website, it claims that a "third-party reseller" is only liable for infringement where it engaged in some

unspecified "volitional conduct." (Def.'s Renewed Mot. to Dismiss, at 6). It relies

upon cases involving digital copyrights where internet service providers or search

engines are absolved from liability when illegally copied works pass through their

sites. See CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d 544, 549-550 (4th Cir. 2004);

Field v. Google Inc., 412 F. Supp. 2d 1106 (D. Nev. 2006); Religious Technology

Center v. Netcom On-Line Communication Services, 907 F. Supp. 1361 (N.D. Cal.

1995). The defendants in those cases do not commit infringement because they were

mere conduits for information. "[T]he Copyright Act does not require that the

infringer know that he is infringing [but] it nonetheless requires conduct by a person

who causes in some meaningful way an infringement." CoStar Group, 373 F.3d at

549. On the other hand, in this case, the Defendant did affirmatively sell the pendants,

and presumably profited in some fashion from the sale of the items. Because the

Defendant engaged in conduct which contributed to infringement (even if innocently),

this case falls within the traditional rule that a "copyright owner may proceed against

anyone in the chain of distribution for infringement." 2 JOHN GLADSTONE MILLS III,

DONALD C. REILLY III & ROBERT C. HIGHLEY, PATENT LAW FUNDAMENTALS § 6:119

(2nd Ed.). "[I]f the manufacture of a copy or phonorecord constitutes an infringement

of the reproduction or adaptation right, its distribution will infringe the distribution

right . . . even if the distributor in acquiring ownership of the copy or phonorecord

from an infringing manufacturer had no notice of plaintiff's copyright." 2 MELVILLE

B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 8.12, at 12 (2008). Thus,

the law of this circuit is that:

> [E]ven an unwitting purchaser who buys a copy in the secondary market
> can be held liable for infringement if the copy was not the subject of a
> first sale by the copyright holder. Thus unless title to the copy passes
> through a first sale by the copyright holder, subsequent sales do not
> confer good title.

American International Pictures, Inc. v. Foreman, 576 F.2d 661, 664 (5th Cir. 1978)

(citation omitted); see also Microsoft Corp. v. Big Boy Distribution LLC, 589 F.

Supp. 2d 1308, 1317 (S.D. Fla. 2008). The Defendant makes no effort to distinguish

this seemingly clear precedent. This approach may seem unfair to "innocent

resellers." Nonetheless, the Copyright Act prioritizes recovery (even allowing joint

and several recovery)[1] to protect against insolvent or unavailable reproducers over

fairness to downstream distributors. 2 MELVILLE B. NIMMER & DAVID NIMMER,

NIMMER ON COPYRIGHT, § 8.12, at 1 (2008). The Defendant is subject to liability as

a distributor.

## 2. Validity of the Copyright

---

[1]Because joint and several recovery is allowed, see BUC International Corp. v. International Yacht Council Ltd., 517 F.3d 1271, 1278 (11th Cir. 2008), the Court need not consider the Defendant's arguments that liability against the Defendant would lead to a double recovery. "Motions seeking credit for settlement amounts obtained against joint tortfeasors are appropriately brought under Rule 60(b)(5)." Id. at 1275.

Next, the Defendant argues that the Plaintiff did not have a valid copyright because its bird's nest pendant lacks originality. A prima facie case of copyright infringement requires that (1) the Plaintiff owned a valid copyright and (2) there was unauthorized copying of protected elements of the work. Peter Letterese & Associates, Inc. v. World Institute of Scientology Enterprises, International, 533 F.3d 1287, 1300 (11th Cir. 2008). Originality is the indispensable, constitutional requirement for a valid copyright. And, only the original expression of an idea is protected under the Copyright Act which protects original expression of an idea, and not the idea itself. Id. at 1302. A work is original if an author independently creates the work and it possesses "at least some minimal degree of creativity." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991); BUC International Corp. v. International Yacht Council Ltd., 489 F.3d 1129, 1140-41 (11th Cir. 2007). An original work need not be novel and may be crude or obvious. Feist, 499 U.S. at 345-46. "To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." Id. at 346. Originality is determined as a matter of law only if the evidence is so overwhelmingly in favor of the movant that no reasonable jury could find a contrary result. Compare BellSouth Advertising & Pub. Corp. v. Donnelly Information Pub., Inc., 999 F.2d 1436, 1444 (11th Cir. 1993) with BUC International, 489 F.3d at 1141 n.26.

Before consideration of the merits, a few evidentiary matters require discussion. The Defendant has introduced evidence from the Plaintiff's website to support its argument that there was no infringement. They include a digital picture of a bird's nest candle snuffer in addition to a picture of the pendant. The Plaintiff notes that this evidence is outside the pleadings and the Motion to Dismiss should be converted to one for summary judgment, along with the requisite notice to the parties and statement of material facts. "It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court." Jones v. Automobile Ins. Co. of Hartford, Connecticut, 917 F.2d 1528, 1531-32 (11th Cir. 1990). The Court may consider the exhibits attached to the Defendant's motion without converting it, provided that the documents are central to the complaint and undisputed. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). The Plaintiff's bird's nest pendant is clearly central to the Plaintiff's infringement claim and it is still for sale on the Plaintiff's website. Consideration of the pendant images will not convert the motion. As to the candle snuffer, the Court will exercise its discretion and decline to consider it at this time.

Another evidentiary consideration is the Plaintiff's introduction of its certificate of copyright registration. The Plaintiff seeks to buttress its argument of originality with the certificate. A certificate of registration constitutes prima facie evidence of

the validity of a copyright, but only if it was obtained within five years of the first publication of the work. 17 U.S.C. § 410(c). Here, the Plaintiff concedes that the certificate of registration was obtained outside of that window, so its evidentiary weight is within the discretion of this Court. Id. In the context of originality, its value is not substantial. "Unlike a patent claim, a claim to copyright is not examined for basic validity before a certificate issues." Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 143 (D.C. N.J. 1982) (quoting H.R. Rep. No. 94-1476, at 157 (1976), reprinted in 1990 U.S.C.C.A.N. 5659, 5773).

Significantly, the Plaintiff claims it is not seeking a monopoly over the idea of bird's nest jewelry. There are other variations of bird's nest jewelry sold by others, but the Plaintiff is only claiming infringement on the Defendant's allegedly identical pendant. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 14). To be sure, the Plaintiff's creation strikes one as a generic bird's nest. But in nature, birds' nests can be deeper, wider, or narrower. Birds may arrange them neatly out of twigs and straw, or they may create less symmetrical forms that even incorporate human trash. Birds may lay eggs in the nest that have the same color, vary in color, or bear spotted patterns. And the number of eggs laid varies with the type of bird. In short, paraphrasing an oft-quoted expression, God gives every bird his worm, but it is up to the bird to make his nest.

The Plaintiff's bird's nest is wide and shallow. Twigs are incorporated into the nest, but not smoothly throughout. Instead, they run more like veins across the inside bowl that highlight the eggs. This layout of the twigs may be rather obvious, but it is also somewhat unnatural. Atop the twigs are three eggs in nest - two that are off-white and one that is more lavender. Although the degree of inspiration is slight, it meets the originality threshold. Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110, 1112 (D. Col. 2005) ("No matter how poor artistically the author's addition, it is enough if it be his own.") (citations omitted).

The nature of the work distinguishes it from the cases relied upon by the Defendant. In Todd, the barbed-wire jewelry was not original because it was not recast or arranged in an original way but instead stuck with the "elemental arrangement" of barbed wire. Id., 379 F. Supp. 2d at 1113. Here, the Plaintiff arranged the nest in the slightly atypical way described above. Further, in Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co., Inc., 509 F.2d 64, 65-66 (2d Cir. 1974), the Second Circuit found no originality in a bejeweled-backed turtle in part because there are only a certain number of vertebrae segments on a turtle. Id. There are no such natural limitations here -- a natural nest could have any number of eggs depending on the species.

Furthermore, the cases are mixed on the copyrightability of minor variations from nature. One commentator argues that "a very modest quantum of originality will suffice. Thus, relatively simple butterfly and vegetable designs have been held protectible." 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 2.08, at 6 (2008) (citing Fabrex Corp. v. Scarves by Vera, Inc., 129 U.S.P.Q. 392 (S.D.N.Y. 1961)). Similarly, generic jewelry in the shape of wavy vines has been protected. Paul Morelli Design, Inc. v. Merit Diamond Corp., 2003 WL 22300163 (E.D. Pa. 2003). And a court protected the copyright of flower brooches made of beads and wire shaped into petals, leaves, and a stem. M. Lady, LLC v. AJI, Inc., 2007 WL 2728711 (S.D.N.Y. 2007). Thus, the Plaintiff's original expression of a bird's nest is copyrightable.

Finally, the Defendant argues that there is no valid copyright because the complaint did not allege prior creation. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 10). As discussed above, the Court has discretion to decide the appropriate evidentiary weight for the Plaintiff's certificate of registration of copyright. 17 U.S.C. § 410(c). The parties barely mentioned the element of prior creation in their briefing. Because of this, the Court deems it more efficient to consider the registration sufficient evidence of prior creation at this stage.

3.   Copying

Having pled the existence of a valid copyright, the Plaintiff must prove copying

by a preponderance of the evidence.  BUC International, 489 F.3d at 1129.  A plaintiff

may show copying either through direct evidence of copying or indirectly where the

defendant had access to the copyrighted work and the defendant's work is

substantially similar.  Peter Letterese, 533 F.3d at 1300-01. Without access to the

work, a plaintiff must show that the works were strikingly similar. Id. More pertinent

to this case, evidence of common mistakes is reliable evidence of copying.  Although

common errors do not establish that the two works are substantially similar per se,

they do provide strong probative evidence that a defendant actually copied a work.

See, e.g., Bellsouth Advertising, 999 F.2d at 1446 n.23.  In this case, the Plaintiff

argues that the same common error -- the imprint of a particular finger -- is present in

its pendants and the ones sold by the Defendant.

The Plaintiff has pled substantial (even striking) similarity, claiming that the

Defendant was selling an "exact copy" of the pendant.  (Amended Compl. ¶ 10).

"Historically, courts have hesitated to make determinations as to infringement or non-

infringement [even] on a summary judgment motion because of their reluctance to

make subjective determinations regarding the similarity between two works."  Peter

Letterese, 533 F.3d at 1302.  The Plaintiff has pled a sufficient claim for copyright

infringement. Consequently, the Defendant's request for attorneys fees ancillary to the copyright infringement claim should be denied.

B. Unfair Competition Claim

The Plaintiff also asserts a claim for unfair competition. The Defendant argues that the unfair competition claim should be governed by Maryland law and that the allegations fail to satisfy the elements of Maryland's unfair competition law. The Defendant claims that Georgia's conflict-of-laws doctrine of <u>lex loci delicti</u> mandates application of Maryland law essentially because the Defendant made its business decisions in Maryland. The Plaintiff, on the other hand, argues for a conflict-of-laws determination based upon the Restatement's "most significant contacts rule." The Plaintiff does not cite any authority holding that Georgia uses this conflict-of-laws analysis in unfair competition claims or economic torts generally. In general, Georgia courts apply the rule of <u>lex loci delicti</u> to tort claims. <u>See generally</u> <u>Dowis v. Mud Slingers, Inc.</u>, 279 Ga. 808 (2005) (affirming the use of <u>lex loci delicti</u> in tort cases and disavowing the "most significant relationship" test). Yet in this case, because the Defendant allegedly sold the pendants via its internet website that presumably shipped across the country, "the application of the traditional conflict-of-laws tort rule[s]" may be problematical. 4 LOUIS ALTMAN & MALLA POLLACK, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 24:21, at 1 (4th Ed.). "[W]hen

tortious matter is . . . published in a nationally distributed newspaper or magazine or on the Internet, the tort may occur separately in all 50 states and in other nations as well. Therefore the law of each of these jurisdictions may have to be examined in order to determine whether tort claims can be asserted." Id.

In this case, there is no need to embark on such a survey. Assuming that Georgia does follow the lex loci delicti rule for unfair competition, it "seems preferable to accept the plaintiff's place of business as the place where the loss has been sustained, and thus to determine all substantive issues of unfair competition under one law, irrespective of in how many other states actual sales may have been made." E.H. Schopflocher, Annotation, Conflicts of Laws, With Respect to Trademark Infringement or Unfair Competition, Including the Area of Conflict between Federal and State Law, 148 A.L.R. 139, at *16 (1944). Significantly, the Plaintiff's claim fails even under its preferred choice of law.

The complaint seeks damages specifically for "Common Law Unfair Competition." (Amended Compl. ¶ 45). But in its brief opposing the Defendant's Motion to Dismiss, the Plaintiff argues that there:

> [I]s no reason why Maryland law should apply to this common law claim, Plaintiff defers to the application of Georgia law to this claim. Under the Georgia Fair Business Practices Act ("FBPA"), a cause of action for unfair competition exists for persons injured by "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."

(Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 17-18) (quoting O.C.G.A. § 10-1-393(a)).  Consequently, the Court concludes that the Plaintiff relies upon Geogia's FBPA in support of its unfair competition claim.

The Eleventh Circuit, following Georgia precedent, has clearly stated that a party may only bring an action under the FBPA as a member of the consuming public. Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 363-64 (1997) modified and remanded on other grounds.  It is improper to "expand the coverage of the FPBA to provide a cause of action against [competitors]." Lone Star, 106 F.3d at 364 (discussing Friedlander v. PDK Labs, Inc., 266 Ga. 180 (1996)).  The complaint alleges that the Defendant's actions were "in complete disregard of Plaintiff's rights" and "irreparably damaged Plaintiff."  (Amended Compl. ¶¶ 47-48). The Plaintiff only seeks to vindicate its business interest and ignores its rights as a consumer.  Therefore, in regard to the unfair competition claim, the complaint is deficient, and the claim should be dismissed.

## IV.  Conclusion

For the reasons set forth above, the Defendant's Motions to Dismiss and for Attorneys Fees [Doc. 5, 28] are GRANTED IN PART and DENIED IN PART.

SO ORDERED, this 4th day of March, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge